Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1672 | **DATE** | 5/10/2000 |
| **CASE TITLE** | Plastech Exterior Systems, Inc. Vs. Deere & Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached order, Plastech's motion to compel arbitration is granted in part and denied in part. Defendant Deere & Company is hereby ordered to submit to arbitration in Chicago, Illinois its dispute with Plastech that is set forth in the case now pending in the Southern District of Iowa. Plastech's motion to compel arbitration is otherwise denied. The parties are directed to submit to the Court by May 12, 2000 a proposed form of final order conforming to this Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | MAY 1 2 2000 date docketed |
| | Notified counsel by telephone. | |
| X | Docketing to mail notices. | IS docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | 5/10/2000 date mailed notice |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number 18

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PLASTECH EXTERIOR SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 00 C 1672 |
| | ) | |
| DEERE & COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

MAY 12 2000

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plastech Exterior Systems, Inc., formerly known as United Screw & Bolt Corporation (USB), brought this action under 9 U.S.C. §4, claiming that disputes it has with Deere & Company which have given rise to two lawsuits filed in federal court in Iowa are subject to arbitration in Chicago pursuant to a contractual arbitration clause. By stipulation of the parties, the judges presiding over the two Iowa cases have entered orders stating that this Court is to decide the issue of arbitrability. For the reasons set forth below, this Court concludes that one of the disputes is subject to arbitration and the other is not.

Plastech supplies parts to Deere plants located in Ottumwa and Waterloo, Iowa. The parties' overall relationship dates back to 1958, when USB, Plastech's predecessor, began supplying parts to Deere-Ottumwa. In 1972, USB began supplying parts for Deere-Waterloo. In August 1996, USB entered into a Long Term Supply Agreement with "John Deere Ottumwa Works of Deere & Company . . . , located at Ottumwa, Iowa" the purpose of which was "to establish a long term relationship between [USB] and John Deere Ottumwa Works . . . ." Long



Term Supply Agreement, ¶I.B. The Agreement recited that it "replaces and supersedes any past agreements between these two parties," except for a 1988 agreement between a division of USB and Deere-Ottumwa. *Id.*, ¶III.A. Under the Agreement, Deere-Ottumwa designated USB as "the preferred supplier" of a wide range of parts and agreed to buy its requirements of those parts from USB for a period extending through December 1999. *Id.*, ¶¶I.B, III.B & III.C. USB agreed to utilize its newly-built facility in Grinnell, Iowa to manufacture the parts, though the parties could mutually agree to exceptions to this. *Id.* ¶III.H. Deere-Ottumwa also agreed to encourage other Deere & Company Agricultural Division manufacturing facilities in Iowa to consider the USB Grinnell facility as a manufacturing source. *Id.*, ¶III.K.

The Agreement provided that it could be terminated by either party on 12 months notice or on 90 days notice in the event of a material breach. *Id.*, ¶III.B. Section XXVI of the Agreement stated that "[i]n the event of any controversy, claim or dispute of whatever nature between the parties arising out of or relating to this Agreement or the breach, termination, enforceability or validity thereof," the dispute was to be settled by mediation and/or arbitration conducted in Chicago pursuant to the rules of the American Arbitration Association. *Id.*, ¶XXVI.

At the same time that USB was supplying parts to Deere-Ottumwa pursuant to the Long Term Supply Agreement, it was also supplying parts to Deere-Waterloo. This supply relationship, which had begun in 1972, was not mentioned in the 1996 Long Term Supply Agreement between USB and Deere-Ottumwa. According to Plastech, both its Ohio and Grinnell, Iowa facilities supplied parts to Deere-Waterloo.

Plastech acquired USB sometime after the execution of the Long Term Supply Agreement. During 1999, a dispute arose between Deere-Ottumwa and Plastech. Plastech

evidently stopped supplying parts to Deere-Waterloo in what Deere claims was an improper effort to gain leverage in its dispute with Deere-Ottumwa. In mid-December 1999, Plastech and Deere entered into an agreement to resolve their disputes, at least on an interim basis. The agreement was embodied in a letter from Plastech to Deere dated December 14, 1999 which covered issues relating to both Deere-Waterloo and Deere-Ottumwa. The specifics of the agreement are not pertinent here other than two provisions that made reference to arbitration: the final provision of the letter agreement stated that the parties "will mediate and then, if necessary, arbitrate any disputes which fall under the terms of the arbitration provision contained in the Long Term Supply Agreement," and the parties also agreed that disagreements over Deere's purchase of raw materials remaining at Plastech's Grinnell facility likewise would be subject to arbitration.

Despite their December truce, Plastech and Deere quickly returned to the battlefield. In early March, Deere filed two lawsuits against Plastech, one in the Northern District of Iowa and one in the Southern District of Iowa. In the Northern District case, Deere alleged that following the December agreement, Plastech continued to delay shipping parts to Deere-Waterloo and threatened to suspend shipments altogether unless Deere paid for raw materials that Plastech claimed to have purchased in anticipation of orders from Deere-Ottumwa and agreed to purchase excess raw materials and parts that Plastech had in connection with its supply relationship with Deere-Waterloo. Deere sought damages, return of Deere tooling used by Plastech to make parts for Deere-Waterloo, and a declaration that it was not obligated to pay for Plastech's raw materials and excess parts allegedly related to the Deere-Waterloo supply relationship.

In the Southern District case, Deere contended that Deere-Ottumwa had a relationship

3

with Plastech's Ohio plants that was separate from its relationship with Plastech's Grinnell, Iowa facility and that was defined by a series of purchase orders issued by Deere-Ottumwa to Plastech. Deere asserted that the relationship was winding down and that Plastech had demanded that Deere-Ottumwa purchase excess raw materials at Plastech's Ohio facilities that it claimed to have purchased in anticipation of future orders. In the Southern District of Iowa lawsuit, Deere sought a declaratory judgment that it was not obligated to purchase the excess raw materials.

Plastech filed this action shortly after Deere filed the two Iowa cases. It claims that all the parties' disputes are interlaced and that they are all subject to the arbitration provision in the Long Term Supply Agreement. Plastech filed the case in Chicago because the Agreement provides that arbitration is to be conducted here. It also interposed as a defense in each of the Iowa cases a contention that the disputes are subject to arbitration. However, as indicated earlier, the judges presiding over those cases have, by stipulation of the parties, entered orders which provide that this Court will decide the issue of arbitrability.

The arbitrability of a dispute depends on whether the parties agreed to arbitrate it; a party "can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 945 (1995). In the particular circumstances of this case, it is up to the Court, not an arbitrator, to determine the issue of arbitrability; there is no "clear and unmistakable evidence" that the parties intended to submit that issue to an arbitrator. *Id.* at 944.

We address first the dispute between Plastech and Deere-Waterloo that is the subject of the Northern District of Iowa case. Though it is undisputed that the only contract between the parties that contains an arbitration provision is Plastech's contract with Deere-Ottumwa, Plastech

4

argues that that provision also covers the dispute involving Deere-Waterloo. The Court disagrees. In determining whether a dispute is subject to arbitration, a court does not simply determine whether an arbitration agreement exists; it also "measures the scope of that agreement and determines whether the present dispute is included within its reach." *Lebanon Chemical Corp. v. United Farmers Plant Food, Inc.*, 179 F.3d 1095, 1100 (8th Cir. 1999). The Long Term Supply Agreement is clear on its face; it covers only Plastech's relationship with the "John Deere Ottumwa Works." There is nothing in the Agreement suggesting that it governs to Plastech's dealings with other Deere plants.

Plastech cites several cases purportedly supporting the proposition that when parties to an agreement with an arbitration requirement have a separate contractual arrangement without such a requirement, the initial arbitration provision may nonetheless cover disputes relating to the separate contract. *See* Plastech Supp. Brief, pp. 3-5. But in each of these cases, the dispute at issue actually concerned the agreement containing the arbitration provision, or the provision itself was materially broader than the one in the Long Term Supply Agreement.[1] The case upon which Plastech relies the most heavily, *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566 (4th Cir. 1998), illustrates the latter of these points. There as here the parties had two contracts, one without an arbitration provision and one containing such a provision. The arbitration clause in the second contract covered all claims "relating to . . . any aspects of the

---

[1] In *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59 (2d Cir. 1983), cited by Plastech, the court indicated that the issue of arbitrability should itself be submitted to the arbitrator if the contract's arbitration clause is "broad." *Id.* at 64. That view would not appear to survive *First Options*, in which the Supreme Court required "clear and unmistakable evidence" of an affirmative intent to submit the issue of arbitrability to an arbitrator. 514 U.S. at 944-45.

5

relationship between Hallmark and Retailer." *See id.* at 569. The Court held that this provision was broad enough to cover disputes concerning the first contract. If the Long Term Supply Agreement had a similarly-worded arbitration clause, the Court would have no hesitation in ordering arbitration of all of the Plastech - Deere disputes. But here the arbitration clause is significantly narrower: it does not cover all disputes relating to "the relationship" between Plastech and Deere but rather extends only to disputes relating to "this Agreement" – that is, the Long Term Supply Agreement between Plastech and Deere-Ottumwa.

Nor can the Court say that Plastech's dispute with Deere-Waterloo arises out of or relates to Plastech's Long Term Supply Agreement with Deere-Ottumwa such that arbitration is required. Even though Plastech's predecessor USB had an ongoing relationship with Deere-Waterloo when the Long Term Supply Agreement was executed, there was no hint in the Agreement that it was meant to apply to any relationship other than the one USB had with Deere-Ottumwa. The Agreement's title and preamble announced that it was an agreement between USB and "John Deere Ottumwa Works" – not with Deere & Company generally. Plastech has offered nothing to indicate that its supply relationship with Deere-Waterloo was ever treated by the parties as subject to or covered by the terms of its contract with Deere-Ottumwa. And there is nothing to suggest that Plastech and Deere intended the Long Term Supply Agreement to be an overarching agreement covering the totality of their dealings; indeed, the Agreement on its face left intact Deere-Ottumwa's 1988 agreement with USB's Cleveland Stamping Division. For these reasons, disputes arising from Plastech's supply relationship with Deere-Waterloo cannot be said to "arise out of" or "relate to" the Long Term Supply Agreement with Deere-Ottumwa.

Plastech says that all of its disputes with Deere are linked. Indeed they are; Plastech has

6

made them so. As Deere characterizes it, Plastech has withheld delivery to Deere-Waterloo in order to gain leverage in its dispute with Deere-Ottumwa. Though we do not adopt Deere's characterization, it does not appear to be seriously disputed that Plastech has determined to treat all of its current disputes with Deere as part of a single whole. Does this mean that Plastech's dispute with Deere-Waterloo now "relates to" or "arises out of" its contract with Deere-Ottumwa? We think not. To allow one contracting party to unilaterally force arbitration in this manner of a dispute that would be non-arbitrable standing alone would do violence to the principle that "the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute." *See First Options,* 514 U.S. at 943. The federal policy favoring arbitration is not so strong as to require disputes to be shoehorned into arbitration agreements that do not cover them simply because one party wants the disputes to be arbitrated.

For these reasons, the Court concludes that Plastech's dispute with Deere-Waterloo, the subject of the lawsuit now pending in the Northern District of Iowa, is not subject to arbitration.

We turn next to Plastech's dispute with Deere-Ottumwa that is the subject of the lawsuit now pending in the Southern District of Iowa. In contrast to our previous discussion, this dispute does concern the same Deere plant that entered into the Long Term Supply Agreement with Plastech's predecessor USB. Deere seems to argue that the Agreement has been terminated and the arbitration clause has therefore expired. Termination of the Agreement, however, does not extinguish Deere's obligation to arbitrate disputes – indeed the arbitration provision specifically covers disputes relating to termination of the Agreement. To accept Deere's argument would strip this contractual provision of any meaning. And even if the Court were to accept Deere's argument, Deere made, in the December 14, 1999 letter agreement, a separate undertaking to

7

arbitrate any disputes falling within the terms of the Long Term Supply Agreement's arbitration clause, and that separate agreement to arbitrate has not been terminated or abrogated.

Deere's primary argument is that even though the dispute underlying the Southern District of Iowa case concerns Deere-Ottumwa, it is unrelated to the Long Term Supply Agreement. According to Deere, that Agreement concerned only parts to be supplied by Plastech's Grinnell plant, whereas the dispute here involves raw materials held at Plastech's Ohio facilities. Deere also points out that The Long Term Supply Agreement says it applies to "the parts to be sold by U.S.&B. to Deere which are listed on Exhibit A," *see* Long Term Supply Agreement, ¶II; Deere says (and it is undisputed) that the parts supplied to Deere-Ottumwa by Plastech's Ohio plants were never listed on Exhibit A.

The Court disagrees with Deere's contention that the Long Term Supply Agreement is necessarily limited to items supplied by Plastech's Grinnell plant. Though USB agreed to utilize the Grinnell facility to manufacture parts for Deere-Ottumwa, *see* Long Term Supply Agreement, ¶III.H, the Agreement also provided that the parties could mutually agree to exceptions. By accepting parts produced by other Plastech facilities, Deere-Ottumwa could be deemed to have agreed to an exception within the meaning of that provision. In addition, Paragraph II.E of the Agreement, Deere-Ottumwa agreed that it would give USB the chance to sell it other parts "similar to those available" at the Grinnell plant. This provision would appear to be broad enough to permit a conclusion that Plastech's supply of parts from its Ohio facilities to Deere-Ottumwa, whether or not they were listed on Exhibit A.

After reviewing the parties' briefs and supporting materials, the Court inquired whether the supply relationship between Plastech's Ohio facilities and Deere-Ottumwa was covered by

8

the 1988 agreement that the Long Term Supply Agreement expressly left intact. Were that the case, the dispute underlying the Southern District of Iowa case plainly would not be subject to the arbitration provision in the Long Term Supply Agreement. The 1988 agreement states that it "applies to the items listed in the attached Exhibit A, which list may be amended upon agreement of the parties," and it obligates Deere-Ottumwa to purchase its requirements of those parts from USB's (now Plastech's) Cleveland Stamping Division. 1988 Purchase Agreement, ¶¶2 & 4. Both parties, however, say they cannot locate the attachments to the 1988 Agreement. Though this by itself would leave up in the air the answer to the question posed by the Court, any suggestion that the Deere-Ottumwa relationship with Plastech's Ohio plants is covered by the 1988 agreement is trumped by the fact that in the Southern District of Iowa case, Deere has asserted that the Deere-Ottumwa relationship with Plastech-Ohio "is not based on Deere-Ottumwa's requirements," thus indicating that at least as Deere sees it, the 1988 agreement (which is a requirements contract) does not apply to the current dispute. *See* Complaint in *Deere & Co. v. Plastech Exterior Systems, Inc.*, No. 4-00-CV-90113 (S.D. Iowa).

The question of whether the Southern District of Iowa dispute is subject to the Long Term Supply Agreement's arbitration provision is not free from doubt. However, such doubts are to be resolved in favor of arbitration. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983); *Mastrobuono v. Shearson Lehman Hutton Inc.*, 514 U.S. 52, 62 (1995). The Court concludes that the dispute must be submitted to arbitration pursuant to the Long Term Supply Agreement.

The Court recognizes that its conclusion – that some of the parties' disputes are subject to arbitration and some are not – lacks a certain symmetry. It likely would be more economical for

9

all of the disputes between Deere and Plastech to be adjudicated in a single forum, be it a court or an arbitration panel. But the Court's determination of these questions is governed by contract, not considerations of economy, and the parties' only contract that provides for arbitration simply cannot be read to cover all of their current disputes.

For these reasons, Plastech's motion to compel arbitration is granted in part and denied in part. Defendant Deere & Company is hereby ordered to submit to arbitration in Chicago, Illinois its dispute with Plastech that is set forth in the case now pending in the Southern District of Iowa. Plastech's motion to compel arbitration is otherwise denied. The parties are directed to submit to the Court by May 12, 2000 a proposed form of final order conforming to this Memorandum Opinion and Order.

MATTHEW F. KENNELLY
United States District Judge

Date: May 10, 2000